UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY RAGAN,

      Plaintiff,                        CASE NO. 2:12-cv-12032

v.                                   HON. PATRICK J. DUGGAN

OFS ACQUITION, INC. d/b/a
OMNI FACILITY SERVICE,

      Defendant.

_____/

## OPINION AND ORDER

This is an employment discrimination case arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*  Plaintiff Shirley Ragan worked in the payroll department of Defendant Omni Facility Service ("Defendant" or "Omni") from July 2007 until her termination on September 9, 2010.  In August 2010, Plaintiff filed an internal complaint alleging race and gender discrimination against Defendant's Director of Human Resources.  In response to this grievance, Defendant hired a third-party investigator who determined that Plaintiff's allegations could not be corroborated.  As a result of the third-party report, Plaintiff was terminated for cause for allegedly filing a willfully false complaint of sexual harassment in contravention of company policy.  Soon thereafter, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  After participating in the EEOC's conciliation process, Plaintiff filed a complaint in this Court on May 6, 2012, stating

three causes of action under Title VII: Race Discrimination (Count I), Sex Discrimination (Count II), and Retaliation (Count III).  Presently before the Court is Defendant's Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56.  The Court held a hearing on this motion on November 26, 2012.  For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's claims of race and sex discrimination but denies Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African American woman, began working in payroll and maintenance at Omni on July 7, 2007.  (Ragan Dep., Def.'s Mot., Ex. 9, at 6:15-16, 7:6-9; *see also* Employment Contract, Def.'s Mot., Ex. 5.)   On August 6, 2010, just over three years into her employment, Plaintiff filed a written internal complaint about Omni's Director of Human Resources, William Dreyer, alleging that he was discriminating against Plaintiff on the basis of her race and gender.  (Internal Complaint, Def.'s Mot., Ex. 1.)  Plaintiff previously complained to management about Mr. Dreyer, although the content of the complaints is disputed.  (Gronau Aff., Def's Br. in Supp., at ¶ 3.[1])  In her written complaint, Plaintiff expressed concern that Mr. Dreyer was "trying to touch" Plaintiff, that she saw him "staring" at her "crotch" and "butt" as though "he [was] raping [Plaintiff] with his eyes," that he would be "waiting" for Plaintiff in Omni's parking lot, and that Mr. Dreyer told Plaintiff that he thought she was pretty and liked her outfit.

---

[1] Although Defendant submitted four affidavits, the Court cites only the affidavit of Ms. Gronau because each affidavit is virtually identical to the others.

(Internal Complaint, Def.'s Mot., Ex. 1.)  Plaintiff testified at her deposition that the allegations contained in her complaint were accurate.  (Ragan Dep., Def.'s Mot., Ex. 9, at 36:3-7.)

After Plaintiff's internal complaint was processed, it was given to Defendant's General Counsel.  (Gronau Aff., Def's Br. in Supp., at ¶ 7.)  Because the General Counsel "knew all the persons involved, and particularly since the allegations were against the Director of Human Resources," the company determined "that an outside, independent examination of the complaint should be conducted."  (*Id.*)  Defendant hired retired judge George Steeh, Sr. to conduct the investigation.  Judge Steeh interviewed Plaintiff, Plaintiff's five witnesses, and Mr. Dreyer.  (Steeh Report, Def.'s Mot., Ex. 2.)  In his report, Judge Steeh observed that discrimination and harassment complaints often involve a "he said, she said" situation; notwithstanding this observation, Judge Steeh found "no support" for Plaintiff's allegations, even from her own witnesses.  (*Id.* at 1.)  Judge Steeh noted that he "did not find any evidence of any sexual harassment or racial intimidation by Bill Dreyer against [Plaintiff]."  (*Id.*)  The report also explained that even if the allegations were true, "which I believe they are not, [Plaintiff's] allegations do not rise to the level of sexual harassment or racial intimidation."  (*Id.* at 2.)

Defendant's General Counsel received Judge Steeh's report, which is dated September 2, 2010, on September 7, 2010.  (Gronau Aff., Def.'s Br. in Supp., at ¶ 9.)  A group of officers met on September 9, 2010 to examine the report.  (*Id.* ¶ 10.)  That very same day, Defendant terminated Plaintiff "for cause."  (Sept. 9, 2010 Termination Letter, Def.'s Mot., Ex. 3.)  In Defendant's view, the requisite cause for Plaintiff's termination

3

was provided by its harassment policy, a policy that indicates that the filing of "a wilfully [*sic*] false report of harassment will be subject to severe disciplinary action up to and including dismissal." (Omni Harassment Policy, Def.'s Mot., Ex. 4.)

On September 14, 2010, five days after her termination, Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR"). (Charge of Discrimination, Def.'s Mot., Ex. 6.) When a charge is filed with the MDCR, the charge is automatically filed with the EEOC. In providing a description of the actions complained of, Plaintiff indicated that she "filed a charge of sexual harassment against the HR Manager. An investigation was conducted and the charges could not be corroborated . . . I believe I have been discriminated against by being discharged in retaliation for filing a charge of sexual harassment[.]" (*Id.*) After conducting an investigation, the EEOC "determined that there [was] reason to believe that a violation [of Title VII] occurred" and invited the parties to take part in the conciliation process. (EEOC Determination, Pl.'s Mot., Ex. I, at 1.) Defendant disagreed with the EEOC's finding and declined to participate in any settlement discussions. (Oct. 31, 2011 Letter, Pl.'s Mot., Ex. J.) Recognizing that attempts at conciliation failed, the EEOC issued Plaintiff a right to sue letter on February 8, 2012. (Pl.'s Mot., Ex. K.)

Plaintiff filed the instant action on May 6, 2012, alleging three causes of action under Title VII: Race Discrimination (Count I), Sex Discrimination (Count II), and Retaliation (Count III). (Compl.) Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure Rule 56 on September 6, 2012, arguing that Plaintiff failed to exhaust administrative remedies on Counts I and II, that Plaintiff failed

4

to make a prima facie case as to all counts, that Plaintiff is unable to demonstrate pretext on the retaliation claim by virtue of the "honest belief rule," and lastly, that the six-month contractual limitations period in Plaintiff's employment agreement bars all Plaintiff's Title VII claims.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012). A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

The initial burden of proving the absence of a genuine dispute rests with the movant, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), who "must support the assertion by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(A)-(B). While this inquiry requires the Court to construe factual disputes, and the inferences there from, in the light most favorable to the non-moving party, only disputes over facts that might affect the outcome of the suit

5

preclude the entry of summary judgment. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

If the moving party discharges their initial burden using the materials specified in Federal Rule of Civil Procedure 56(c), the burden of defeating summary judgment shifts to the non-movant who must point to specific material facts – beyond the pleadings or mere allegation – which give rise to a genuine issue of law for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. A mere scintilla of evidence supporting the non-movant's claim will not prevent summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

Moreover, if, "after adequate time for discovery and upon motion," the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial[,]" a court should enter summary judgment in favor of the moving party. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552. When this occurs, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* 477 U.S. at 323, 106 S. Ct. at 2552. Thus, if the non-movant does not support the elements of a claim or defense, the moving party is "entitled to judgment as a matter of law."

## III.    ANALYSIS

**A.    Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's Race Discrimination Claim Because Plaintiff Did Not Exhaust Administrative Remedies.**

6

"In designating the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).  The congressional framework precludes employees alleging employment discrimination in violation of Title VII from initiating suit in federal court unless a charge of discrimination has first been filed with the EEOC.  42 U.S.C. § 2000e-5(f)(1); *see also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 470-71 (6th Cir. 2008) (unpublished) ("As a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies." (citations omitted)); *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001) ("It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge.")  Mindful that "aggrieved employees – [] not attorneys – usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis*, 610 F.3d at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)).

In the instant case, Plaintiff's EEOC charge indicates that the discrimination was based on retaliation.  (Charge of Discrimination, Def.'s Mot., Ex. 6 (only the box labeled "retaliation" is checked.))  In providing a description of the actions complained of, Plaintiff indicated that she "filed a charge of sexual harassment against the HR Manager.

An investigation was conducted and the charges could not be corroborated . . . I believe I have been discriminated against by being discharged in retaliation for filing a charge of sexual harassment[.]"  (*Id.*)  The charge contains no reference to Plaintiff's race. Plaintiff, therefore, has failed to exhaust administrative remedies with respect to her race discrimination claim.  Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's race discrimination claim.

**B.      Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's Sex Discrimination Claim Because Plaintiff Has Not Made a Prima Facie Showing of Sex Discrimination.**

To establish a prima facie case of sex discrimination under Title VII, a plaintiff using circumstantial evidence must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she was "either replaced by someone outside the protected class or treated differently than similarly situated, non-protected employees."  *Noble v. Brinker Intern, Inc.*, 391 F.3d 715, 728 (6th Cir. 2004).  At issue here are the third and fourth elements.

Plaintiff argues that her termination was the adverse action.  (Pl.'s Br. in Resp., at 4.)  However, the termination appears connected to Plaintiff's retaliation claim and analytically divorced from the allegations of sex discrimination.  Plaintiff was terminated for filing a willfully false complaint of harassment, (*id.*), which is not tied to Plaintiff's gender.  In an effort to show a connection between the discharge and her gender, Plaintiff argues that Defendant "never terminated anyone for filing a wilfully [*sic*] false sexual harassment complaint prior to Plaintiff."  (*Id.*)  Standing alone, this does not establish a dispute about a material fact as there is no evidence that anyone ever filed a willfully

false complaint.  Accordingly, Plaintiff fails to establish an adverse employment action and fails to demonstrate that she was treated differently than a similarly-situated individual.

The Court need not address Defendant's argument that Plaintiff failed to administratively exhaust her sex discrimination claim because even if the description she provided could be deemed "reasonably related to" the events in her EEOC charge, *Younis*, 610 F.3d at 362 (citation omitted), Plaintiff has not established a prima facie case of sex discrimination under Title VII.  The Court grants summary judgment as to Plaintiff's sex discrimination claim.

**C.   Defendant is Not Entitled to Summary Judgment on Plaintiff's Retaliation Claim Because Genuine Issues of Material Fact Remain.**

Plaintiff alleges that Defendant retaliated against her by firing her after she engaged in the protected activity of complaining about discriminatory treatment she was subjected to on account of her race and gender.  Title VII prohibits retaliation against employees who complain about discrimination.  42 U.S.C. § 2000e-3(a).  The familiar burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), governs claims of retaliation based on circumstantial evidence.  *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009).

**1.   *Prima Facie Case***

A prima facie case of retaliation has four elements: (1) the plaintiff engaged in activity protected by Title VII; (2) the defendant knew about the plaintiff's exercise of this right; (3) the defendant took an employment action adverse to the plaintiff; and (4)

9

the protected activity and the adverse employment action are causally connected. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Defendant argues that "Plaintiff cannot even make out a prima facie case," (Defendant's Brief in Support 9), but fails to expand upon this bare assertion. As such, the Court examines each element.

a.      *Plaintiff Engaged in Protected Conduct*

Plaintiff engaged in activity protected by Title VII when she complained about Mr. Dreyer to her superiors and when she filed an internal complaint. Under Title VII, there are two types of protected activity: participation in a proceeding with the EEOC and opposition to an apparent Title VII violation. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (citation omitted). Because Plaintiff did not file a complaint with the EEOC with respect to the alleged race and sex discrimination, Plaintiff does not fall within the protections of the participation clause. *Id.* Plaintiff did, however, discuss her concerns with her supervisor,[2] Sandra Gronau, and filed an internal complaint on August 6, 2010. Complaining to management about a possible Title VII violation "is classic opposition activity." *Id.* (citation omitted).

Importantly, "in order to obtain Title VII's retaliation protections, [Plaintiff] must have had 'a reasonable and good faith belief' that the harassing acts [s]he [opposed by

---

[2] While the content of the complaints made to Plaintiff's superiors is disputed, on summary judgment, the Court draws inferences in favor of the non-moving party.

reporting constituted a] Title VII violation[].”  *Id.* (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (citing *EEOC Compliance Manual*, (CCH 8006))). This highlights a crucial point in this case: even though Plaintiff may not have suffered from either race- or sex-based discrimination, Plaintiff “does not need to oppose actual violations of Title VII in order to be protected from retaliation.”  *Id.* (citing *Johnson*, 215 F.3d at 579-80 (“[A] violation of Title VII’s retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.”)); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989) (“A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful.”)).

Defendant contends Plaintiff was fired for filing a willfully false charge of discrimination against Mr. Dreyer.  (*See, e.g.*, Interrog. Answer, Pl.’s Br. in Resp., Ex. P, No. 13 (explaining that Plaintiff was terminated based on Judge Steeh’s report “indicating that [Plaintiff] had made a willfully false statements against William Dryer”).[3])  However, Defendant has not submitted any evidence beyond mere supposition that Plaintiff did not have a reasonable and good faith belief that the conduct complained

---

[3] The Court notes that nowhere in Judge Steeh’s report does it say Plaintiff filed a willfully false complaint.  Rather, the report found “no support” for Plaintiff’s allegations.  (Steeh Report, Def.’s Mot., Ex. 2, at 1.)  Whether Judge Steeh was referring to the allegations of harassment or to the underlying factual allegations is a bit unclear, however, it appears as though he was referring to the latter.  How Judge Steeh could reach this conclusion after interviewing witnesses who merely could not corroborate Plaintiff’s allegations is puzzling.  The fact that nobody else observed the conduct does not mean that it did not take place.  Judge Steeh’s report concluded that “I did not find any evidence of any sexual harassment or racial intimidation by Bill Dreyer against [Plaintiff].”  (*Id.*)

of violated Title VII.  As such, Defendant has not shown a dispute about a material fact with regard to whether Plaintiff engaged in protected activity in lodging her complaints against Mr. Dreyer.

The Court finds that Plaintiff has satisfied the first element of the prima facie case. She complained about being subjected to conduct that she perceived as unlawful discrimination.  Plaintiff testified at her deposition about the events she perceived as supporting her allegations of discrimination.  That these perceptions may have ultimately been determined to be incorrect is irrelevant to whether Title VII's anti-retaliation provision protected Plaintiff from opposing what she felt was discrimination.

b.      *Defendant Knew About Plaintiff's Protected Conduct*

This second element of the prima facie framework is easily satisfied.  Plaintiff reported the conduct to Ms. Groneau and subsequently filed a written complaint (Defendant's Motion, Exhibit 1) in accordance with Defendant's harassment policy. *Wasek*, 682 F.3d at 470.

c.      *Plaintiff Suffered an Adverse Employment Action*

Plaintiff suffered a "materially adverse" employment action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2414, (2006) (explaining that a "materially adverse" action "in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotation marks and citations omitted).  Undoubtedly, "[t]erminating a person's employment is a materially adverse action." *Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 10 (6th Cir. 2010) (unpublished).

12

d.      *A Causal Nexus Between the Protected Conduct and the Adverse Action Exists*

In order to establish the causal connection required in the fourth prong, the employee must produce evidence sufficient to infer that the employer would not have acted had the employee not engaged in protected activity. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003).  The fact that the protected activity and adverse employment action are acutely near in time may serve as indirect evidence of retaliation. *Compare Mickey*, 516 F.3d at 524 (reconciling Sixth Circuit cases and explaining that temporal proximity standing alone will not always suffice to establish a causal connection but that the inference of retaliation is strengthened when the proximity between the protected conduct and adverse action is very close) *and Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 563 (6th Cir. 2004) (finding that temporal proximity of three months was "significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying [the plaintiff's] burden of demonstrating a prima facie case"); *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) *with Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim.").

In the instant case, Plaintiff satisfies the causation element of the prima facie framework because the record supports an inference that Defendant "would not have acted had the employee not engaged in protected activity." *Abbott*, 348 F.3d at 543.  The Court finds two facts particularly persuasive in this regard.  First, although Defendant contends that the termination decision was "based solely on the report of Judge Steeh" and "not based on the fact that [Plaintiff] had filed a complaint[,]" Defendant

13

simultaneously maintains that Plaintiff was terminated for violating the provision of its employment policy prohibiting employees from making willfully false statements of discrimination.  (Def.'s Br. in Supp. 9; *see also* Gronau Aff. at ¶¶ 9-10.)  Logic suggests that Defendant did in fact consider Plaintiff's complaint in reaching its termination decision because Defendant's justification for terminating her necessarily involves her complaint.  Had Plaintiff not filed an internal complaint, which the Court has already explained constituted protected conduct, Plaintiff would not have been fired.

The second circumstance suggesting a causal connection between the protected conduct and the adverse action is the temporal proximity between the events in this case. Plaintiff filed a written complaint on August 6, 2010.  (Internal Complaint, Def.'s Mot., Ex. 1.)  Judge Steeh's report, dated September 2, 2010, was given to Defendant's General Counsel on September 7, 2010.  (Gronau Aff., Def.'s Br. in Supp., at ¶ 9.)  A group of Omni officers met on September 9, 2010 to review the report.  (*Id.* ¶ 10.)  After the meeting and also on September 9, 2010, Defendant terminated Plaintiff "for cause." (Sept. 9, 2010 Termination Letter, Def.'s Mot., Ex. 3.)  The abbreviated time period between the events supports an inference of causation.  *See, e.g.*, *Mickey*, 516 F.3d at 524.

The Court finds that Plaintiff has satisfied all of the elements of a prima facie case of retaliation.

## 2.    *Legitimate, Nondiscriminatory Reason*

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse

14

employment action at issue.  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252,

101 S. Ct. 1089, 1093 (1981) (citation omitted); *EEOC v. Avery Dennison Corp.,* 104

F.3d 858, 862 (6th Cir. 1997).  Defendant relies on its employment policy – which

indicates that the filing of "a wilfully [*sic*] false report of harassment will be subject to

severe disciplinary action up to and including dismissal[]" – as a legitimate,

nondiscriminatory reason for terminating Plaintiff.  (Omni Harassment Policy, Def.'s

Mot., Ex. 4.)  Defendant has satisfied its burden of production.

### 3.    *Pretext*

Once an employer offers a legitimate and nondiscriminatory reason for the adverse

employment action, the burden shifts back to the employee to demonstrate, by a

preponderance of the evidence, that the employer's proffered explanation is merely a

pretext for discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133,

142-43, 120 S. Ct. 2097, 2106 (2000); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285

(6th Cir. 2012).  Defendant argues that Plaintiff cannot demonstrate pretext, relying on

the "honest belief rule."  (Def.'s Br. in Supp. 10.)  This rule provides that "if an employer

has an 'honest belief' in the nondiscriminatory basis upon which it has made its

employment decision, then the employee will not be able to establish pretext."  *Majewski*

*v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("[A]s long as

an employer has an honest belief in its proffered nondiscriminatory reason for

discharging an employee, the employee cannot establish that the reason was pretextual

simply because it was ultimately shown to be incorrect.").

### a.    *The Honest Belief Rule and Its Operation*

The Sixth Circuit has adopted a modified honest belief rule. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)).  Under the doctrine of this Circuit, an employer may avoid a determination that it's claimed nondiscriminatory reason for the adverse employment action at issue was pretextual if the employer establishes "reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 708 (citations omitted); *Clay v. UPS*, 501 F.3d 695, 714-15 (6th Cir. 2007) (noting that the employer bears the burden of identifying the particularized facts that it reasonably relied upon in order to benefit from the honest belief rule).  This is true even if the employer's "conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (citing *Clay*, 501 F.3d at 713-15).  "Even when the employer [asserts an honest belief defense], the protection afforded by the rule is not automatic. . . . [O]nce the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce proof to the contrary." *Wright*, 455 F.3d at 708 (internal quotation marks omitted) (citations omitted); *see also Handlon v. Rite Aid Servs., L.L.C.*, No. 12-1275, 2013 U.S. App. LEXIS 2343, at *10 (6th Cir. Jan. 31, 2013) (unpublished) ("An employer's proffered reason for termination can be overturned upon a showing that the employer lacked an honest belief that the employee was guilty of the alleged violations.") (citing *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558-59 (6th Cir. 2009)).

At this stage, the plaintiff has the burden to produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her."

16

*Blizzard*, 698 F.3d at 285 (alteration in original) (quoting *Chen*, 580 F.3d at 400).  An

employee may accomplish this by showing "'(1) that the proffered reasons had no basis

*in fact*, (2) that the proffered reasons did not *actually* motivate [the discharge], or (3) that

they were *insufficient* to motivate the discharge.'"  *Id.* (emphasis in original) (quoting

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (quoting *Manzer v.*

*Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994))).  This tripartite

framework "need not be applied rigidly[; r]ather, 'pretext is a commonsense inquiry: did

the employer fire the employee for the stated reason or not?'"  *Id.* (quoting *Chen*, 580

F.3d at 400 n.4).  Courts must remain mindful, however, that employees bear the burden

of demonstrating that the employer's proffered reason was a pretext for discrimination,

which requires showing "both that the reason was false[] *and* that discrimination was the

real reason[]" for the adverse action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515,

113 S. Ct. 2742, 2752 (1993) (emphasis in original).

       In determining whether an employer "reasonably relied on the particularized facts

before it, [the Sixth Circuit] do[es] not require that the decisional process used by the

employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether

the employer made a reasonably informed and considered decision before taking an

adverse employment action."  *Blizzard*, 698 F.3d at 285 (quoting *Smith*, 155 F.3d at 807).

Although courts should not "micro-manage the process used by employers in making

their employment decisions," they also should not "blindly assume that an employer's

description of its reasons is honest."  *Smith*, 155 F.3d at 807.  Accordingly, "[w]hen the

employee is able to produce sufficient evidence to establish that the employer failed to

17

make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id.* at 807-08.

b.    *Defendant's Honest Belief Argument*

Defendant argues that it acted reasonably in hiring Judge Steeh to conduct the investigation of Plaintiff's internal complaint.  Defendant further argues that the officers involved in the decision to terminate Plaintiff did not base their decision "on the fact that [Plaintiff] had filed a complaint," rather, the decision makers "had the honest belief that Judge Steeh's report indicated that [Plaintiff] had made a willfully false statement of sexual discrimination against Mr. Dreyer."  (Def.'s Br. in Supp. 9.)  Defendant has offered evidence, by way of affidavits of those involved in the termination decision, (*see, e.g.*, Gronau Aff., Def.'s Br. in Supp.), that it relied on Judge Steeh's two-page report. The question is whether this reliance was made on the basis of particularized facts and whether the belief regarding the willful filing of a false complaint was honestly held.

To bolster its position that the honest belief rule precludes a finding of pretext, Defendant points to Judge Steeh's finding that not one of Plaintiff's witnesses corroborated Plaintiff's allegations and the fact that Judge Steeh found no evidence of harassment or intimidation.[4]  (Def.'s Br. in Supp. 10 n.2.)  Together, these facts could

---

[4] While Judge Steeh's report does conclude that "I did not find any evidence of any sexual harassment or racial intimidation by Bill Dreyer against [Plaintiff,]" (Steeh Report, Def.'s Mot., Ex. 2, at 1), Title VII's anti-retaliation provisions apply if Plaintiff had "'a reasonable and good faith belief' that the harassing acts [s]he [opposed by

18

support an inference that Plaintiff willfully filed a false harassment complaint. Because

"mistaken, foolish, trivial, or baseless[]" conclusions do not prevent an honest belief

defense, *Chen*, 580 F.3d at 401 (citation omitted), Defendant asserts that it applies here.

c.     *Application of the Honest Belief Rule*

       Despite Defendant's contentions regarding its reliance on Judge Steeh's report, the

Court notes that the report contains no evidence that Plaintiff filed a willfully false

complaint. While Judge Steeh's report indicates that the acts Plaintiff complained of

would not amount to harassment under the law,[5] (Steeh Report, Def.'s Mot., Ex. 2, at 2),

there is nothing in the report that suggests Plaintiff did not possess a reasonable and good

faith belief that the conduct complained of violated Title VII. *Wasek*, 682 F.3d at 469. In

fact, the EEOC interviewed Plaintiff's five witnesses, the same witnesses interviewed by

Judge Steeh. In affidavits submitted with Plaintiff's Response, four of five witnesses

indicate that Plaintiff had complained to them about Mr. Dreyer's conduct. (EEOC Affs.

of Andrea Robinson, Orlean Lewelling, Lena Walker, and Brandon Whittet, Pl.'s Br. in

Resp., Ex. H.) These four witnesses also opined that Plaintiff believed she was being

harassed by Mr. Dreyer. (*Id.*) This evidence militates against a finding of willfulness.

Although these affidavits were not before Defendant when the officers decided to

---

reporting constituted a] Title VII violation[]." *Wasek*, 682 F.3d at 469 (citations
omitted).
[5] One of the things Plaintiff complained about was Mr. Dreyer's "staring." While this
may not amount to actionable harassment under the law, the company's harassment
policy includes "staring" as conduct that may constitute harassment. (Omni Harassment
Policy, Def.'s Mot., Ex. 4.) Moreover, Plaintiff acted in accordance with Defendant's
harassment policy when she spoke to a supervisor and filed a complaint. (*Id.*)

terminate Plaintiff, the Court stresses that there no facts regarding willfulness in the report on which they relied.

Additionally, of the five witnesses interviewed by both Judge Steeh and the EEOC, three could not recall if Judge Steeh asked them if they had reason to suspect that Plaintiff fabricated the charges against Mr. Dreyer.  (EEOC Affs. of Andrea Robinson, Coreen Theisen, and Brandon Whittet, Pl.'s Br. in Resp., Ex. H.)  One witness stated that Judge Steeh did not ask him if he felt the charges were false and explained that Judge Steeh only asked about specific instances of conduct alleged by Plaintiff.  (EEOC Aff. of Orlean Lewelling, Pl.'s Br. in Resp., Ex. H.)  The remaining witness was "sure" that Judge Steeh asked if she felt the charges were made up but told him she thought Plaintiff believed she was being harassed even though the witness never observed any harassing conduct.  (EEOC Aff. of Lena Walker, Pl.'s Br. in Resp., Ex. H.)

Simply stated, there were no "particularized facts[,]" *Wright*, 455 F.3d at 708, in Judge Steeh's report with respect to the willfulness of Plaintiff's internal complaint. Despite Defendant's description of the two-page report as "detailed[,]" (Def.'s Br. in Supp. 8), the Court finds that the lack of detail on the crucial issue, that is the absence of particularized facts regarding the willfulness component, renders Defendant's stated reliance on the report problematic.  Plaintiff was terminated for willfully filing a false complaint but the report is devoid of particularized facts regarding willfulness.  One would assume that an employer who terminates an employee for violating company policy would have particularized facts directly related to the rule allegedly violated. Facts supporting an inference of the key element of the company policy relied upon to

terminate an employee are simply insufficient.  Here, not only would the complaint have

to be false to fall within the company rule relied upon, but Plaintiff would have had to

willfully file the false complaint.   In light of the absence of any such evidence, the Court

cannot conclude that Defendant made "a reasonably informed and considered decision

before" terminating Plaintiff.  *Smith*, 155 F.3d at 807.

 Plaintiff contends that the termination decision was retaliatory and that

Defendant's purported reliance on Judge Steeh's report was pretextual because it had no

basis in fact.  *Blizzard*, 698 F.3d at 285 (citations omitted).  While an employer's stated

reason may be lacking in a factual basis, "[a]n employee's bare assertion that the

employer's proffered reason has no basis in fact is insufficient to call an employer's

honest belief into question, and fails to create a genuine issue of material fact."  *Seeger v.

Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285-86 (6th Cir. 2012) (citation omitted).  Here,

however, Plaintiff has not merely asserted that the decision lacked a factual basis but has

pointed to the absence of facts suggesting Plaintiff willfully filed a false complaint.  The

Court will not "blindly assume that an employer's description of its reasons is honest[,]"

*Smith*, 155 F.3d at 807, in light of problems highlighted above.

 Further supporting the Court's determination that a dispute about material fact

remains is the fact that Defendant's proffered explanations for the termination are

inconsistent, which calls into question the "honesty" of its belief with respect to the

willfulness issue.  Defendant contends that the termination decision was "based solely on

the report of Judge Steeh" and "not based on the fact that [Plaintiff] had filed a

complaint."  (Def.'s Br. in Supp. 9; *see also* Gronau Aff., at ¶¶ 9-10.)  However,

21

Defendant maintains that Plaintiff was terminated for violating the provision of its employment policy prohibiting employees from making willfully false statements of discrimination.  (Def.'s Br. in Supp. 9.)  Defendant's inconsistent positions defy logic.  It cannot be true that Defendant did not consider Plaintiff's complaint against Mr. Dreyer when the very basis for terminating Plaintiff was her filing of a willfully false complaint.

Lastly, the Court believes that this case is more nuanced than other cases finding that an employer's honest belief in the grounds for termination precluded liability.  This is because in this case the work rule Plaintiff allegedly violated is directly related to Plaintiff's decision to engage in protected conduct.  Title VII's antidiscrimination provision "seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status."  *Burlington N.*, 548 U.S. at 63, 126 S. Ct. at 2412 (citation omitted).  "The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."  *Id.*  Because enforcement of Title VII depends "upon the cooperation of employees who are willing to file complaints and act as witnesses . . . 'effective enforcement [can] only be expected if employees fe[el] free to approach officials with their grievances.'"  *Id.* 548 U.S. at 67, S. Ct. at 2414 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S. Ct. 332, 335 (1960) (Fair Labor Standards Act case)).  Because "[c]ooperation and voluntary compliance were selected [by Congress] as the preferred means for achieving" Title VII's antidiscrimination goal, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1911, 1017 (1974), "appropriate informal opposition to

22

perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist[,]" *Hearth v. Metropolitan Transit Commission*, 436 F. Supp. 685, 688 (D. Minn. 1977).   As explained throughout this opinion, there is no evidence that Plaintiff acted inappropriately in reporting Mr. Dreyer's conduct.

The policy underlying the antiretaliation provision has led the Sixth Circuit to recognize that the participation clause protects an employee who files an entirely malicious and false claim with the EEOC or other authorized agency from retaliatory discharge.  *Booker*, 879 F.2d at 1312 (citation omitted); *see also Proulx v. Citibank, N.A.*, 659 F. Supp. 972 (S.D.N.Y. 1987).  A contrary holding would "sanction employers reacting to a presumably unwelcome discrimination claim[,]" just as Defendant reacted in the case at bar.  *Proulx*, 659 F. Supp. at 977.  It would be an invitation for employers to "mak[e] a unilateral determination that [an] employee's claim was malicious[6] [or willfully false], and then discharge [that employee] in consequence."  *Id.* at 977-78.

The Court acknowledges that protection under the participation clause is generally greater than that accorded to activity falling within the opposition clause.  *See, e.g.*, *Booker*, 879 F.2d at 1312.  Under the opposition clause, "[c]ourts are required 'to balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'"  *Id.* (citation omitted).  This is not a case, however, where Plaintiff's conduct "so interfered with the performance of [her] job that it render[ed] [her] ineffective in the position for which [s]he was

---

[6] In *Proulx*, the Court "equat[d] 'malice' with known falsity."  659 F. Supp. at 975.

23

employed." *Id.*  In fact, the record is devoid of any facts suggesting that Plaintiff's work suffered as a result of her filing a complaint against Mr. Dreyer.  Moreover, there is no indication that she "violate[d] legitimate rules and orders of [her] employer, disrupt[ed] the employment environment, or interfere[d] with the attainment of [her] employer's goals." *Id.* (citation omitted).  Plaintiff spoke to a supervisor and filed a complaint as directed in the company's harassment policy.  (Omni Harassment Policy, Def.'s Mot., Ex. 4.)  The company's own policy includes "staring" as conduct that may constitute harassment.  (*Id.*)  That the conduct was not harassment does not deprive Plaintiff of the protection of the antiretaliation provision of Title VII.  To hold otherwise would mean that aggrieved employees would risk their jobs each time they filed such a grievance.

Moreover, the rationale undergirding the rational in participation clause cases applies with equal force here.  If employers were shielded from liability for retaliation based on a unilateral determination that an employee did not have a reasonable and good faith belief that the conduct they complained of constituted a violation of Title VII, a chilling of the exercise of statutory rights would result.   For example, employees may feel compelled "to file formal charges rather than seek conciliation or informal adjustment of grievances." *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045 (7th Cir. 1980) (citation omitted).  This would undermine the enforcement mechanism of Title VII.

In the instant case, Plaintiff insists that the underlying conduct occurred, as evidenced by her sworn deposition testimony.  Regardless of whether the conduct amounted to illegal harassment under the law, Plaintiff contends that she had a good faith basis for believing that Mr. Dreyer's conduct violated Title VII.  There is no indication

24

from the evidence, including Judge Steeh's report, that Plaintiff filed a *willfully* false

complaint against Mr. Dreyer.  In fact, the witness affidavits discussed on pages nineteen

and twenty of this Opinion and Order suggest otherwise.  While Judge Steeh was unable

to substantiate Plaintiff's allegations, there is a distinction between a false allegation and

a false allegation made willfully.  Thus, even if less protection is given under the

opposition clause, there is no evidence in the record to support Defendant's assertion that

Plaintiff filed a willfully false complaint.

In sum, the Court is of the opinion that Plaintiff has established a prima facie case

of retaliation and has produced "sufficient evidence from which a jury could reasonably

reject [the employer's] explanation of why it fired her[.]"  *Blizzard*, 698 F.3d at 285

(citation omitted).   The Court therefore concludes that a genuine issue of material fact

exists and that summary judgment is not appropriate on Plaintiff's claim of retaliation.

**D.       The Contractual Statute of Limitations Does Not Bar Plaintiff's Suit.**

Defendant's final argument for summary judgment is that Plaintiff agreed to a six-

month statute of limitations in which to file suit as a condition of employment.  (Def.'s

Br. in Supp. 12; Def.'s Mot., Ex. 5.)   This argument is unavailing.  Plaintiff could not file

suit until she exhausted the EEOC administrative process, a process that almost always

exceeds six months.  In the instant case, the EEOC did not issue its Determination on

Plaintiff's September 14, 2010 charge of discrimination until October 21, 2011, and did

not issue Plaintiff a right to sue letter until February 8, 2012.  (EEOC Determination,

Pl.'s Mot., Ex. I; Right to Sue Letter, Pl.'s Mot., Ex. K.)  Plaintiff instituted the present

action on May 6, 2012.  "Were this Court to uphold the six month limitation of action

clause as to Plaintiff's Title VII claim, the EEOC's period of exclusive jurisdiction would have the effect of abrogating Plaintiff's ability to bring a Title VII suit." *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002) (finding a six month limit in which to file suit unenforceable against the plaintiff's Title VII claim).  Defendant's cited authorities are neither binding on this Court nor does the Court find them persuasive.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Defendant has demonstrated entitlement to summary judgment as a matter of law as to Plaintiff's claims of race and sex discrimination but not as to Plaintiff's claim of retaliation.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's race discrimination and sex discrimination claims (Counts I and II) and that both counts are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** with respect to Plaintiff's claim of unlawful retaliation (Count III).


Dated:	March 6, 2013

                                 s/PATRICK J. DUGGAN
                                 UNITED STATES DISTRICT JUDGE


Copies to:

**Stella M. Webster, Esq.**
**Neil A. Strefling, Esq.**